**FILED**
**Oct 23, 2025**
**08:59 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **J.D. RUSSELL,** | ) | **Docket No. 2024-60-3623** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BENCHMARK CONTRACTORS, LLC,** | ) | **State File No. 14754-2024** |
| **Employer,** | ) | |
| **And** | ) | **Judge Joshua Davis Baker** |
| **BUILDERS MUTUAL INS. CO.,** | ) | |
| **Carrier.** | ) | |

_____

## EXPEDITED HEARING ORDER
_____

On September 30, 2025, the Court held an expedited hearing on Mr. Russell's entitlement to temporary total disability benefits from his injury date until his first visit with an authorized physician. Although Mr. Russell was temporarily totally disabled from working during this period, Builders Mutual argued he is not owed temporary disability given a four-month delay in signing a panel of physicians.

However, because the panel did not represent an offer of treatment in these circumstances, the Court holds Mr. Russell is likely to prevail at trial on past temporary disability benefits and awards him attorney's fees for an unreasonable denial of benefits.

### Claim History

On February 1, 2024, a "heavy steel tripod" struck Mr. Russell's head, neck, back, and right shoulder while working. An ambulance took him to an emergency room, where he received staples for a head laceration and treatment for a concussion from being hit in the head by a "150 lb. object." His foreman met him at the hospital, assuring him he could take time off to heal.

The next day, Benchmark reported the injury to its insurer, Builders Mutual. Claims adjuster Nicole Billings called Mr. Russell three days after that, leaving him a voicemail. However, according to her declaration, Mr. Russell never returned her call.

Because emergency medical staff instructed Mr. Russell to follow up with his family doctor, he visited his doctor February 6 and February 12 for treatment of post-concussion syndrome and removal of his staples. During those visits, he complained of acute shoulder pain, dizziness and falls, nausea, and headaches. Due to "[p]ost concussion syndrome," his doctor took him "off work for 8 weeks from the 1st Feb."

According to Mr. Russell's declaration, his doctor said he needed a workers' compensation doctor. But Mr. Russell, who was 78 when injured, testified that in roughly 65 years of working, he had "never fooled with workers' compensation" and had "no clue" how to find a workers' compensation doctor.

Mr. Russell could not recall missing any calls from an adjuster but said after his work injury, his mind was "fuzzy" from his concussion. He had memory problems and difficulty focusing and mostly slept because of his concussion symptoms and medication. He said he kept "Jennifer," a secretary at Benchmark, informed about his condition. He believed his wife had texted medical records to Jennifer.

About a week after Ms. Billings attempted to call Mr. Russell, Benchmark reported to her that Mr. Russell needed treatment, telling her that "Mr. Russell had not returned to work and was now requesting treatment for an alleged head and shoulder injury," according to her declaration. "In response," she wrote, "I called Mr. Russell again and left a message for him to return [my] call."

Within three days of the adjuster's second phone call to him, Mr. Russell experienced a medical emergency of "stroke-like symptoms and right-sided weakness." An ambulance rushed him to an area where a helicopter could airlift him to a hospital for treatment. He was told he had a stroke.

Within a few days of that, Mr. Russell hired counsel. Emails between his attorney and defense counsel suggested the insurer wanted to gather all records and investigate medical causation before offering medical treatment due to questions about the stroke and because "he missed several months of work last year as a result of injuries (including shoulder surgery) from a MVA."

In a February 21 email, defense counsel acknowledged Mr. Russell "was struck in the head and sustained a laceration and mild concussion" at work but continued, "[M]y clients cannot provide any workers' compensation benefits until they are able to obtain information on this claim."

When Mr. Russell's attorney pressed for treatment, defense counsel responded in a March 1 email, "We still don't have medical records *except for the initial ER visit*[.]" (emphasis added). He continued, "We can get a HIPAA Release signed then, get the records and then be in a position to address authorized medical treatment."

Three days later, on March 4, defense counsel emailed panels of neurosurgeons and orthopedists to Mr. Russell's attorney. On March 7, Mr. Russell authorized the release of his medical records.

But on March 11, when Mr. Russell's attorney again asked for benefits, defense counsel responded, "We offered two panels last week and need to have the [stroke] records prior to any appointment." Later, he added, "We are certainly not wanting to delay any treatment or TTD due. We just need to confirm that there is medical evidence linking the stroke to the work injury[.]"

In May, Mr. Russell filed a petition seeking medical treatment and temporary disability benefits. Two months later, on July 22, Mr. Russell signed the March 4 panel selecting orthopedist Dr. James Rubright. The next day, his attorney returned the signed panel, and he saw Dr. Rubright for treatment of his right shoulder on August 8, 2024.

In February 2025, Dr. Rubright responded to a questionnaire, stating Mr. Russell could not work with his shoulder injury from February 1 until his August 8 appointment, and that after August 8, he was restricted to "no use" of his right upper extremity. Similarly, Dr. Clint Morgan completed a questionnaire affirming that Mr. Russell cannot work because of his shoulder injury: "[H]e is still unable to return to work due to significant weakness in his right upper extremity due to [his] shoulder injury . . . Until this is corrected, the patient really is not appropriate to return to work." Mr. Russell continues to treat with both doctors.

Builders Mutual paid temporary disability beginning with the August 8 appointment onward but denied benefits from the injury date until the appointment, arguing Mr. Russell had not complied with medical treatment when he did not sign the orthopedist panel until July 22. Mr. Russell said he signed the panel as soon as he saw it.

The parties agreed Mr. Russell's compensation rate is $577.07 and that temporary total disability benefits from February 1 through August 7, 2024, total $15,498.46.

As for Mr. Russell's request for attorney's fees, his counsel detailed her work on the case and requested a fee of $12,075.00. She also requested an award of 20% of any accrued temporary disability benefits.

**Findings of Fact and Conclusions of Law**

Mr. Russell need only present sufficient evidence at this stage that he is likely to prevail at a final hearing on his request for temporary disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

No one disputed that Mr. Russell was temporarily totally disabled by his work injuries from February 1 through August 7, 2024. His family doctor noted on February 12 that his concussion disabled him from working at least eight weeks from his injury date. Both treating physicians stated Mr. Russell was totally disabled from working because of his shoulder injury through August 7.

*Noncompliance*

Builders Mutual argued that because Mr. Russell did not return two calls from an adjuster and did not sign an orthopedist panel until July 22, he had not accepted medical treatment and is not owed temporary disability from February 1 through August 7 because of noncompliance with treatment.

When an employee "refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish . . . the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." *Id.* § 50-6-204(d)(7).

Notably though, Builders Mutual was not offering "medical or specialized services that the employer is required to furnish" during this period.

Rather, Builders Mutual was noncompliant with its statutory obligation to offer medical treatment. When an employee "has suffered an injury and expressed a need for medical care," the employer is required to give a panel of three doctors "as soon as practicable but no later than three (3) business days[.]" *Id.* § 50-6-204(a)(3)(A)(i); Tenn. Comp. R. & Regs 0800-02-01-.06(1) (2018).

Builders Mutual did not provide a panel of physicians timely, and when emailed, the panel did not represent an offer of treatment under the circumstances.

According to her declaration, the adjuster knew from Benchmark on February 2 that Mr. Russell had suffered an injury, and Benchmark knew the injury was severe enough for emergency care. The foreman who visited Mr. Russell in the hospital knew he had staples, which would have required removal. And by her own admission, the adjuster knew by

4

February 14 that "Mr. Russell had not returned to work and was now requesting treatment for an alleged head and shoulder injury."

In February, defense counsel knew Mr. Russell had been "struck in the head and sustained a laceration and mild concussion" and also had the emergency room record depicting a 78-year-old man hit in the head by a 150-pound object at work, resulting in a concussion and a laceration that required staples.

In sum, by at least February 14 —if not before—Builders Mutual knew from both the insured and an emergency room record that Mr. Russell had suffered an injury and wanted medical care.

No other information was necessary to trigger the employer's statutory obligation to offer a panel of physicians for treatment. If Mr. Russell could not answer the phone or return calls, a panel could have been sent to him through the mail or communicated to him through an employee of Benchmark.

Further, the March 4 panel did not represent "medical services," because defense counsel informed Mr. Russell's attorney, more than once, that an appointment would not be authorized until the defense had gathered the remaining medical records and investigated medical causation.

Understandably, defense counsel wanted to explore defenses and not to "delay any treatment or TTD due." But the decision to gather records and investigate "medical evidence linking the stroke to the work injury . . . prior to any appointment" has a consequence and inevitably delayed treatment and temporary disability benefits, as alluded to in the email. Moreover, it makes the March 4 panel an empty gesture.

Importantly, an employer's "assertion that an employee has no medical evidence supporting his or her claim does not, standing alone, excuse it from [its] statutory obligations under section 50-6-204(a)(1)(A)." *Hawes v. McLane Co., Inc.*, 2021 TN Wrk. Comp. App. Bd. LEXIS 30, at *10 (Aug. 25, 2021). Further, an employer's "position that it should not be required to provide medical benefits until after it has received Employee's prior medical records is untenable." *Lallo v. Marion Environmental, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 32, at *6 (Sep. 4, 2015).

As the Board instructed in *Lallo*:

It is for [the authorized physician] to determine the extent and nature of the medical treatment, if any, that is reasonable and necessary as a result of Employee's alleged work-related injury. In addition, [the authorized physician] is in the best position to determine what additional information, including past medical records, he may need to review.

5

*Id.* at *9.

Even if supplying a panel without a willingness to authorize an appointment constitutes "medical services," Builders Mutual did not prove Mr. Russell "sat on his rights" or otherwise refused to sign the panel so that temporary disability could accrue. He testified he signed the panel when he saw it, and that testimony went unrefuted. Further, he retained representation to secure benefits, executed a release, and filed a petition—all in an effort to obtain medical treatment during the relevant period.

The adjuster and defense counsel might not have known Mr. Russell was temporarily totally disabled during this time, but that was because Builders Mutual was not providing treatment—and the evidence presented places the onus for that on Builders Mutual. Skirting an obligation to authorize treatment to develop and investigate defenses "exposes [employers] to distinct, and significant, risks." *Berdnik v. Fairfield Glade Cmty. Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *16-17 (May 18, 2017).

*Attorney's Fees*

The Court may award "reasonable attorneys' fees and reasonable costs" when the employer "unreasonably fails to timely initiate any of the benefits" to which an employee is entitled, including medical benefits, "if the workers' compensation judge makes a finding that the benefits were owed at an expedited hearing or compensation hearing." *Id.* § 50-6-226(d)(1)(B).

Attorney's fees and expenses at an interlocutory stage are warranted only in limited circumstances. *Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *29 (Jan. 30, 2018). As in *Thompson*, these are unusual circumstances.

Mr. Russell was owed medical and temporary disability benefits before he even suffered a stroke. It was a witnessed accident that necessitated follow-up treatment. Builders Mutual did not present an affirmative defense or facts that would suggest the accident or injury did not occur as reported or that would otherwise justify delaying treatment to investigate medical causation.

Regardless of the ultimate resolution of the case, Mr. Russell's entitlement to temporary disability benefits for the relevant period will not change, as his concussion disabled him from working for at least eight weeks after the injury, and two authorized treating physicians have stated his right-shoulder injury totally disabled him from working. Moreover, the work Mr. Russell's attorney undertook to secure temporary disability benefits will not change.

Because of the unreasonable delay in both authorizing medical treatment and temporary disability benefits, the Court awards Mr. Russell attorney's fees and expenses at this interlocutory stage.

Additionally, the Court refers Builders Mutual to the Compliance Program of the Bureau of Workers' Compensation for appropriate action under section 50-6-118(a)(9) and (10) for its failure to provide a panel of physicians timely and for failure to timely initiate temporary disability benefits.

**IT IS ORDERED** as follows:

1. Builders Mutual shall pay Mr. Russell $15,498.46 in temporary disability benefits from February 1, 2024, through August 7, 2024.

2. Builders Mutual shall pay Mr. Russell's attorney fees of $12,075.00 for its failure to timely initiate medical and temporary disability benefits under section 50-6-226(d)(1)(B).

3. The Court further awards Mr. Russell's counsel a fee of 20% of the accrued temporary total disability benefits, or $3,099.79.

4. The Court refers Builders Mutual to the Compliance Program of the Bureau of Workers' Compensation for appropriate action under section 50-6-118(a)(9) and (10) for its failure to provide a panel of physicians timely and for failure to timely initiate temporary disability benefits.

5. A status hearing is set for **Tuesday, February 10, 2026, at 9:30 a.m. Central Time.** You must call 615-741-2113 or 855-874-0474 to participate.

6. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED October 23, 2025.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

7

## EXHIBITS

1. Rule 72 declaration of J.D. Russell, including attachments
2. Medical records
3. Rule 72 declaration of Nicole Billings, including attachments
4. Panel of Physicians selecting Dr. Clint Morgan
5. Questionnaire letter and response from Dr. Clint Morgan dated May 30, 2025
6. Email correspondence dated March 11-12, 2024 with a signed release

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as shown on October 23, 2025.

| Name | Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Lauren Ray, Employee's attorney | | | X | lray@forthepeople.com kyle.leroy@forthepeople.com |
| Jeffery Foster, Employer's attorney | | | X | jfoster@morganakins.com plunny@morganakins.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



Right to Appeal:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*